UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HERBERT L. MITCHELL | : | |
| | : | |
| VS. | : | NO. 3:02CV2136(AVC) |
| | : | |
| MAURICE L. COLLIN, | : | |
| TASI VRIGA, | : | |
| EUGENE A. MIGLIARO, JR. | : | |
| and CHRISTOPHER DUNN | : | JANUARY 19, 2004 |

**PLAINTIFF'S LOCAL RULE 56 STATEMENT**

*I   RESPONSES TO DEFENDANTS' CLAIMS OF FACT*

1. Agree.

2. Agree.

3. Agree.

4. Agree that plaintiff was hired pursuant to an undated letter for a position starting on November 2, 2001.  As to job qualifications, disagree because defendants as the moving parties and as the custodians of all VA records, have the burden of producing official documentation of the alleged job qualifications and has failed to do so.

5. Agree that plaintiff was not a social worker.  Otherwise disagree because (a) if he were not qualified for the position he could not have been hired, (b) defendants are the moving parties and have custody of the official job qualifications

yet have failed to produce them, (c) plaintiff was commended repeatedly for the extremely able manner in which he performed his duties. (Plaintiff's deposition transcript, p. 55-57)

    6.  Agree.

    7.  Agree.

    8.  Agree.

    9.  Disagree. (Plaintiff's deposition transcript, p. 55-57)

    10.  Disagree. (Ibid.)

    11.  Agree.

    12.  Agree that the memo was written and circulated.

    13.  Agree with first sentence.

    14.  Agree.

    15.  Agree.

    16.  Disagree. (Plaintiff's deposition in its entirety.)

    17.  Agree.

    18.  Agree.

    19.  Agree that Collin reprimanded the plaintiff for doing extra work. (Plaintiff's Deposition Transcript, p. 102)

    20.  Agree that the plaintiff stated he was not asking to be paid overtime for doing extra work; he was doing the extra work because he wanted to help the veterans. (Ibid.)

21. Disagree. The defendant reprimanded the plaintiff for taking personal leave time when his luncheon with the defendant lasted longer than the half hour he was allowed, apparently because it made the defendant's own failure to do so, and thus his theft of state time, more obvious. (Plaintiff's Deposition, pp. 101-02)

22. Agree.

23. Agree.

24. Disagree.

25. Agree.

26. Disagree.

27. Agree.

28. Agree that Collin threatened to fire plaintiff over a minor matter.

29. Agree.

30. Agree that the plaintiff had a corrected copy and that said copy was in the DVA file.

31. Agree.

32. Agree that Vriga asked Collin to step into the office.

33. Disagree. (Plaintiff's sworn report to Rocky Hill police, included in defendants' submissions.)

34. Disagree. (Ibid.)

35. Agree.

36. Disagree. (Ibid.)

37. Disagree. (Ibid.)

38. Disagree. (Ibid.)

39. Disagree. (Ibid.)

40. Disagree. (Ibid.)

41. Disagree in part. Collin suffers from a psychiatric disability and went to the Newington VA Hospital for emergency psychiatric help. (Plaintiff's Deposition Transcript, p. 51)

42. [There is no paragraph 42 in defendants' submissions.]

43. Disagree. (Plaintiff's police report.)

44. Agree with first sentence. Agree that he in fact did file a report. Disagree with the implication that the two events immediately followed each other.

45. Agree that Vriga left the building in direct violation of police instructions.

46. Disagree. (Plaintiff's statement to police.)

47. Agree that the police investigated and took several statements.

48. Agree that charges were pressed and that prosecution was declined. Otherwise, disagree.

49. Agree that plaintiff was given a letter. Otherwise, disagree. (Plaintiff's deposition transcript, pp. 83, 141-42)

50. Agree.

51. Agree.

52. Agree.

53. Disagree. (Plaintiff's deposition transcript, pp. 83, 141-42)

54. Agree.

55. Agree.

56. Agree.

57. Disagree. This is a legal question, however, and has no place in a Local Rule 56 Statement. Accordingly, plaintiff moves that it be stricken.

58. Disagree. (Plaintiff's deposition transcript, p. 104)

59. Agree.

60. Agree.

61. Agree.

62. Agree.

63. Agree.

64. Disagree. (Plaintiff's deposition transcript, pp. 141-42)

65. Agree.

66. Agree.

67. Agree with first sentence and with first clause of second sentence. Otherwise, disagree. (Plaintiff's deposition transcript, pp. 141-42)

68. Agree.

69. Disagree. (Plaintiff's deposition transcript, pp. 141-42)

70. Disagree. (Plaintiff's deposition in its entirety; plaintiff's police report.)

71. Agree.

72. Disagree. (Plaintiff's deposition transcript, pp. 45-50)

73. Agree with first and third clauses; disagree with second clause. (Ibid.)

74. Agree with first sentence and agree that second sentence states the policy.

75. Agree that the DVA covered up the assault. Otherwise, disagree. (Plaintiff's police report)

76. Agree, but disagree with any implication that it involves nothing more.

77. Disagree. (Plaintiff's deposition in its entirety)

## II    PLAINTIFF'S STATEMENT OF MATERIAL FACTS

1. The plaintiff did not raise his voice at any time during the meeting he had with defendants Collin and Vriga. He stated to Collin that he would have no choice but to file a grievance, whereupon Collin began yelling: "Get the hell out of my office!" to which the plaintiff responded that he was speaking not to Collin but to Vriga. (Plaintiff's deposition transcript, p. 39)

2. At that point, Collin again yelled: "Get the hell out of my office!" and came up to the plaintiff and shoved the plaintiff three times. The plaintiff opened the door and Collin shoved him out. The plaintiff went upstairs and called security. (Ibid.)

3. Both Vriga and Patty Matulis saw Collin shove the plaintiff. (Id. p. 40)

4. Collin, Vriga and Matulis all have lied about the incident. (Ibid.)

5. The only time the plaintiff yelled was to say to Collin: "Get your hands off me!" (Id. p. 45)

6. Plaintiff absolutely never made the statement, "I'vs got mud on you and I'll get you." (Ibid.)

7. A security guard heard Vriga trying to talk the plaintiff out of filing a police or security report on the incident, stating that "Moe Collin was a good guy. He has a...psychiatric problem – and he was under medicine...." (Ibid.)

8. This conversation between the plaintiff and Vriga was overheard by security guard Brian Toolan, who wrote it up. Chris Dunn, Toolan's supervisor, deleted it out of the computer and changed the entries in the logbook to conceal the fact. (Id. pp. 45, 48-49, 133-34)

9. Toolan still works for the department. (Id. p. 86)

10. Somebody called the Rocky Hill police to report Collin's assault upon the plaintiff. (Id. p. 50)

11. Knowing that the police were on the way, Collin, Vriga and Matulis all immediately left the property. (Id. pp. 50-51)

12. Collin went to the Newington VA hospital for emergency psychiatric help. (Id. p. 51)

13. A Rocky Hill police officer called Vriga and toldl him he would be arrested for interference unless he immediately returned. (Ibid.)

14. After the incident, defendant Collin stated to defendant Vriga: "Am I going to lose my job? Am I going to get arrested?" (Id. p. 52)

15. The plaintiff did not threaten Collin. (Ibid.)

16. Prior to this incident, Collin had stated to the plaintiff that the plaintiff was working very hard and very diligently and that he was impressed with the plaintiff's knowledge, demeanor and his relationship with the people. He said to the plaintiff: "You know, you're one of the best people that I've had. You've become the fastest and the quickest." (Id. p. 55)

17. The plaintiff took the initiative to arrange for the Secretary of the Department of Veterans Affairs to present to a 102-year-old female veteran of World War I a medal she had earned during the war but had never received. (Id. pp. 15, 56)

18. Collin hated the filing of union grievances and said to the union steward that he felt that anybody who filed a grievance was by virtue of doing so calling him stupid. (Id. p. 57)

19. After the plaintiff had made his complaint to the Rocky Hill police, defendant Vriga ordered him to be in his office in the early afternoon. As the plaintiff was walking to that office with his union steward, they observed Collin walking out of the facility. There were three security guards present and defendant Vriga. Vriga handed a piece of paper to the union steward and to the plaintiff and said: "Read it." It said that the plaintiff was terminated for inability and unwillingness to perform the

job.  The plaintiff pointed out that they had been telling him that he was doing a great job and had said that publicly on several occasions at the monthly VSO meetings.  (Id. p. 83)

20.  On November 24, 2003, the plaintiff – who is a veteran – went to the Veterans Home at Rocky Hill and there he was told that he was not allowed access to the property.  The security guard did not know the reason, but the order came from the Commissioner's office.  (Id. p. 86)

21.  On one occasion prior to Collin's assault of the plaintiff, Collin had taken the plaintiff and others to lunch in Rocky Hill.  They were there for an hour, but their lunch period is only half an hour.  When the plaintiff filled out his time card, he put down half an hour personal time.  When he submitted that card and turned it in, Collin "went bananas."  (Id. p. 101)

22.  There was a customer that came to the door one day about five minutes before closing time.  The veteran had come from his job and the plaintiff spent a half hour with him.  The following day, the plaintiff told Collin about it and Collin yelled and screamed and "went off."  Collin said: "There is no overtime."  The plaintiff said: "I know that there's no overtime.  I have been working overtime and you've been well aware of that.  I've been coming in on holidays and I don't charge for the overtime."  Collin "went ballistic" about it.  (Id. p. 102)

23.  When the plaintiff's termination was reversed and set aside by the State Labor Board, and he was ordered returned to his job with back pay, the plaintiff was

told that he was supposed to be given his keys, his passes, and that everything was supposed to be as it had been before. But defendant Collin held back all of these things and did not let the plaintiff have his passes and keys or access to the computers until just before he was laid off in 2003. (Id. pp. 104-06)

24. Defendant Vriga submitted a false report to the Rocky Hill police and changed his story several times. The police had to have him come back numerous times because his stories just didn't gel. (Id. p. 132)

25. The plaintiff's layoff in 2003 was further retribution for his having complained about workplace violence. The claim that he was laid off for budgetary reasons was false. (Id. pp. 138-40)

26. There were positions available that the plaintiff could and should have been given, even if his position was being eliminated, but that did not happen. (Id. p. 140)

27. Defendant Migliaro specifically stated to Sam Ranno, a member of the Board of Trustees of the VA hospital, that the reason the plaintiff was fired and the reason he was laid off was because the plaintiff had called the police on defendant Collin. (Id. pp. 141-43)

28. The decision to lay the plaintiff off in 2003 was made by defendant Migliaro. (Id. p. 144)

29. Defendant Collin encouraged the falsification of records, especially when doing so would take money from the federal government. He instructed the plaintiff

that, if he walked the five-minute walk from his office to the VA hospital, he must bill the federal government for half an hour of his time.  (Id. pp. 13-14)

30.  The workplace violence policy of the DVA specifically stated: "If there are any confrontations, verbal or otherwise, all parties involved will face disciplinary action."  (Id. p. 60)

31.  On June 27, 2002, following the assault, the plaintiff filed a written complaint with the head of security at the DVA.  In his complaint, he specifically asserted that defendants Collin and Vriga had violated the "State of Connecticut Hands Off or No Touch Rule" and asked for punitive action against both.  (Defendants' Exhibit 5)

32.  The plaintiff filed a sworn, written criminal complaint against defendant Collin with the Rocky Hill Police Department on the afternoon of June 21, 2002.  (Defendants' Exhibit 6)

33.  Defendant Vriga terminated the plaintiff on July 11, 2002, without any notice, opportunity to be heard or hearing, for the stated reason that "you have demonstrated an inability or unwillingness to perform your duties so as merit [sic] continuation."  (Defendants' Exhibit 7)

34.  On July 17, 2002, defendant Vriga rescinded his termination of July 11 but ordered the plaintiff to report for a hearing on July 23, 2002, and suspended him, with pay, until that date.  His stated reason for this action was "your failure to show a willingness or ability to perform so as to merit continuation.  Your recent

behavior has shown an inability or unwillingness to display appropriate interpersonal skills with your co-workers and supervisor.  In recent events you and your co-worker have been unable to work cooperatively.  There has been contentious behavior surrounding issues of answering the telephone, parking personal vehicles, parking and gassing up the state vehicle.  There have been numerous occasions when you have inappropriately challenged the directives of your supervisor and/or failed to follow the instructions you were given."  (Defendants' Exhibit 8)

  35.  On July 23, 2002, defendant Vriga handed the plaintiff a previously-written letter, dated July 23, 2002, which terminated his employment "effective with the close of business on July 27, 2002" "for your failure to show a willingness or ability to perform so as to merit continuation.  Your recent behavior has shown an inability or unwillingness to display appropriate interpersonal skills with your co-workers and supervisor....In recent events you and your co-worker have been unable to work cooperatively.  There has been contentious behavior surrounding issues of answering the telephone, parking personal vehicles, parking and gassing up the state vehicle.  There have been numerous occasions when you have inappropriately challenged the directives of your supervisor and/or failed to follow the instructions you were given....As a Social Services Trainee the minimum qualifications for eligibility included 'Interpersonal skills; oral and written communications skills; (and an) ability to follow oral and written instructions.'  These are the skills with which you should have entered state service and ones you should

have been continuing to develop and hone during your time as a trainee. You have not demonstrated skills and abilities in these areas at any level of proficiency specifically with regard to co-workers and supervisors." (Defendants' Exhibit 9)

36. The plaintiff was reinstated, as a result of a union grievance, effective October 4, 2002, with retroactive regular wages and benefits to July 27, 2002. (Defendants' Exhibit 10)

        THE PLAINTIFF

BY:_____
        JOHN R. WILLIAMS (ct00215)
        51 Elm Street
        New Haven, CT 06510
        203/562-9931
        FAX: 203/776-9494
        E-Mail: jrw@johnrwilliams.com
        His Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Joseph A. Jordano, Esq., Assistant Attorney General, P. O. Box 120, Hartford, CT 06141-0120.

_____
JOHN R. WILLIAMS