UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HERBERT L. MITCHELL, | : | CIVIL ACTION NO. |
| *Plaintiff* | : | 3:02CV2136(AVC) |
| V. | : | |
| MAURICE COLLIN, TASI VRIGA, EUGENE A. MIGLIARO, JR., CHRISTOPHER DUNN, | : | |
| *Defendant*s | : | JANUARY 30, 2004 |

**DEFENDANTS' REPLY BRIEF TO THE PLAINTIFF'S MEMORANDUM
IN RESISTANCE TO SUMMARY JUDGMENT**

## INTRODUCTION

At the outset, the defendants submit that given Attorney Williams' history of filing dubious and questionable cases that are routinely dismissed on summary judgment as having insufficient merit, he has a lot of nerve to suggest that the defendant's summary judgment motion is frivolous. The present action is a typical Williams & Pattis case, strong on puffery and weak on evidence.[1]

In his response to summary judgment, the plaintiff spews forth a litany of uncorroborated facts and conclusions based solely on his own testimony. The plaintiff and the defendants dispute the events of June 21, 2002 when the plaintiff alleges that he was assaulted. There is no evidence corroborating the plaintiff's story. In contrast, the plaintiff admits that he executed a stipulated agreement that reinstated him into his

---

[1] Furthermore, Attorney Williams is the last person to lecture others about the ethical duties of an attorney. The defendant's are entitled to support their undisputed factual assertions with the plaintiff's own admissions. In the plaintiff's Rule 56(c) response counsel makes reference to Mitchell's deposition in its "entirety", but that deposition was not submitted by the plaintiff as an exhibit. Instead, plaintiff's counsel cherry picked just 31 pages from the plaintiff's 173-page deposition. Also, given the liberty with which counsel misstates certain facts (see Section III below), his ethical purity is hardly beyond reproach.

former position in October 2002 with full back pay and benefits in return for his acknowledgement that he would be respectful to his co-workers and supervisors. (Facts, ¶¶ 55-56, Plaintiff's response admitting ¶¶ 55-56). Therefore, the only adverse employment action that could substantiate the plaintiff's claim in this case was his subsequent layoff in January 2003.

Despite Mitchell's self serving testimony, the defendants are entitled to summary judgment for the following reasons:

1. The plaintiff admits that irrespective of his alleged protected speech, he would have been laid off anyway in 2003 because the union contract required that layoffs occur by seniority and he was the least senior VSO. (Facts, ¶¶ 59-68; Plaintiff Response admitting ¶¶ 59-63, 65-68).

2. The plaintiff has NO evidence of a conspiracy between the defendants and does not submit any evidence to support such a claim except his own speculative assertions.

3. The plaintiff concedes in his deposition that he does not actually know if any of the defendants had any personal involvement in the decision to lay off the plaintiff in January 2003.

4. There is no substantive due process claim because there was no assault that "shocks the conscience" as the plaintiff suggests.

5. The plaintiff was afforded the procedural due process required by law.

**ARGUMENTS**

I. **THE PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS BECAUSE THE PLAINTIFF CONCEDES THAT IRRESPECTIVE OF HIS ALLEGED PROTECTED SPEECH, THE PLAINTIFF WOULD STILL HAVE BEEN LAID OFF IN 2003 BASED ON THE EXPRESS TERMS OF THE UNION CONTRACT.**

Once an employee make out a prima facie case, the burden then shifts to the employer to show that it *would have taken the same action even in the absence of the protected conduct* or that the employee's conduct interfered with the effective and

2

efficient management of agency operations.  See Mt. Healthy Board of Education v. Doyle,  97 S. Ct. 568, 574, 575 (1977); Givhan v. Western Line Consolidated School District, 99 S. Ct. 693 (1979); Connick v. Myers, 103 S. Ct. 1684 (1983); White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1058-1059 (2d. Cir. 1993) cert denied, 114 S. Ct. 185 (1993).

In the present case, Mitchell concedes in his Rule 56(c) response that he was laid off in January 2003 according to the express language in collective bargaining agreement mandating that layoffs occur based on seniority.  The plaintiff admits paragraphs 59-64 and 65-68 of the defendants' Rule 56(c)(1) statement, which sets forth facts showing that irrespective of the June 21, 2002 incident between Mitchell and defendant Collin, the plaintiff would have been laid off in January 2003 based on the express language of the union contract.  So irrespective of defendant Migliaro's personal feelings about the plaintiff calling the Rocky Hill police in June 2002, the union contract expressly required that layoffs be based on seniority.

Plaintiff acknowledges this fact and admits that he was the least senior VSO employee in January 2003.  Also, another male VSO employee was also laid off in January 2003.  Mitchell was not the only person to be laid off, but in fact testified to hearing that twenty eight (28) people were laid off by the DVA.  (Plaintiff's Deposition p. 140:16-19).  Therefore, it is un-refuted that the plaintiff's layoff in January 2003 was based on the legitimate non-retaliatory reason of class seniority under the CBA.[2]

---

[2] Although plaintiff testified to overhearing defendant Migliaro tell a trustee that the reason he [Mitchell] was "let go" was because he called the Rocky Hill police, it is not clear from the plaintiff's testimony of Migliaro's comment what date Migliaro was referring to by the phrase 'let go."  Plaintiff was "let go" [terminated] in July 2002, reinstated in October 2002 and then laid off in January 2003.  Nevertheless,  the union contract controls the order of layoffs and the plaintiff has no evidence that the Commissioner or anyone else had the authority to override the express language of the CBA.

## II. THE PLAINTIFF WAS AFFORDED PROCEDURAL DUE PROCESS AND HAS NO SUBSTANTIVE DUE PROCESS CLAIM.

The plaintiff claims that the defendants' actions violated both his procedural and substantive due process rights. The plaintiff does not delineate anywhere in his memorandum how exactly each defendant was personally involved in the violation of his constitutional rights. Nevertheless, both of these assertions and the argument by counsel, though scant and overly general as they are, fails for legal insufficiency. The defendants also remind the court that the plaintiff had no due process right to a hearing before a layoff occurs because a layoff is not a job termination.

### a. Procedural Due Process

A public employee dismissible for cause is entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing. Cleveland Board of Ed. v. Loudermill, 470 U.S. 532, 105 S. Ct. 1487, 89 L. Ed. 2d 494 (1985). The Loudermill hearing "should be an initial check against mistaken decisions -- essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. Id. at 545-546. The predetermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his or her side of the story. Id. at 546. Notice and hearing is not required, so long as there is the availability of a prompt post-termination opportunity to be heard. See Gilbert v. Homar, 138 L. Ed. 2d 120 (1997); Hunt v. Prior, 236 Conn. 421, 439, 673 A. 2d 521 (1996).

In the instant case, plaintiff was dismissed during what was believed to be his working test period. When the error was discovered, he was reinstated and given a formal Loudermill notice and hearing. The plaintiff admits that at the Loudermill hearing he was represented by his union steward. (Facts, ¶¶ 50-52, Plaintiff's Rule 56(c) admission

4

of facts ¶¶ 50-52).   Moreover, the plaintiff testified that his union representative spoke on his behalf and at least one witness was called to testify for him.

> Q: Did you go for a hearing on July 23rd at nine a.m.,?
>
> A: Yes, we did.
>
> Q: All right. And was your union representative present?
>
> A: Yes, they were.
>
> Q: And did you testify or offer information at that meeting?
>
> A: No, I did not speak at all.
>
> Q: Did anyone come and speak on your behalf other than your union rep?
>
> A: I think Barbara Vaillancourt. I think she was present, but I don't know if she spoke at all.
>
> Q: Your representative handled it for you?
>
> A: Yes.

(Facts, ¶ 52, and Plaintiff's Rule 56(c) response admitting facts Nos. 50-52).

So the plaintiff's claim that he was not afforded an opportunity to present evidence or speak on his own behalf in what he describes as a "sham" hearing is factually inaccurate. The fact that the plaintiff does not agree with the result of the Loudermill hearing does not constitute a procedural due process violation. Simply stated, the plaintiff was afforded procedural due process and his claim has no merit.[3]

### b.  Substantive Due Process

In the present case, the plaintiff contends that his was assaulted by defendant Collin and that the assault in and of itself constitutes a violation of substantive due process.[4] However, conspicuously absent from the plaintiff memorandum is any case law

---

[3]  The plaintiff grieved his dismissal of July 2002 and was reinstated by a written stipulated agreement in October 2002.  The plaintiff admits that he was made whole regarding all back wages and benefits. (Facts, ¶¶s 55-56; Plaintiff Rule 56(c) response admitting ¶¶ 55-56).

[4]  There is no allegation that defendants Migliaro, Dunn or Vriga assaulted the plaintiff.

5

that applies this principle the plaintiff espouses to facts similar in nature to the present case. Perhaps some clarification is in order. Section 1983 does not provide a remedy for every alleged assault and battery that violates state law. Askew v. Millerd, 191 F.3d 953, 958 (8th Cir. 1999). In fact, the Second Circuit has established a stringent test to determine when conduct "shocks the conscience" for the purpose of a substantive due process claim. In the case of Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 252 (2d Cir. 2001), the court noted that conduct shocks the conscience where it is so "brutal" and "offensive" that it does not comport with traditional ideas of fair play and decency. In Johnson, the plaintiff was a minor child who was allegedly assaulted by his gym teacher at school. The court's recitation of the facts is an instructive example of conduct necessary to meet the standard of "brutal" conduct:

> On February 20, 1996, after T.J. and his classmates had finished playing dodge ball, Bucci asked T. J. to hand in the ball. T. J. threw the ball towards Bucci from a distance of about twenty feet. The ball landed near Bucci without hitting him.
>
> In response, Bucci threw two balls back at T.J. and then yelled "you think that's funny, you think that's funny!" as he walked over to T.J. Bucci grabbed T.J. by the throat, shouted "I'll kick the shit out of you!," lifted him off the ground by his neck and dragged him across the gym floor to the bleachers. Bucci then choked T.J. and slammed the back of T.J.'s head against the bleachers four times. Bucci also rammed T.J.'s forehead into a metal fuse box located on the gym wall and punched him in the face. During much of the attack, Bucci prevented T.J. from escaping by placing one of his arms across the boy's chest. Bucci only stopped his assault after another student threatened to intervene.

The gym teacher's conduct in the Johnson case is drastically different from Mitchell's petty claim in the instant case. The obvious difference between the facts in Johnson and the current case is the malicious and sadistic purpose evidenced by the conduct of the defendant in the Johnson case. See Metzger v. Osbeck, 841 F.2d 518, 520 (3d Cir. 1998).

Regarding the present facts, defendant Collin denies that he assaulted Mitchell. But even Mitchell's description of the assault consisting of him being pushed out of Mr. Collin's office after he was told to leave cannot be said to be so "brutal" as to shock the

6

conscience. Mitchell was not physically hurt in any way. No one saw this alleged assault. Moreover, the plaintiff has no evidence to refute Collin's testimony and report to the Rocky Hill police that he felt threatened by Mitchell's conduct. (Facts, ¶¶ 36-39). Nevertheless, in light of the legal standard articulated by the court in <u>Johnson</u>, no reasonable jury could conclude that Collin's alleged conduct was severe enough to shock the conscience. Once again, this argument is a desperate attempt to find some minimal jury question in the hopes of surviving summary judgment.

**III.    THERE IS NO EVDIENCE OF A CONSPIRACY BETWEEN THE DEFENDANTS TO DEPRIVE THE PLAINTIFF OF HIS CONSTITUTIONAL RIGHTS**.

The plaintiff's conspiracy argument is the most ridiculous of all his claims. Several factual assertions in the plaintiff's Rule 56(c) statement are so misleading and false that they deserve mention. In plaintiff's affirmative factual statement No. 24, counsel states that "defendant Vriga submitted a false report the Rocky Hill police and changed his story several times. He had to be called back numerous times because his stories did not gel." The evidentiary citation for this statement is Mitchell's deposition testimony. However, looking at the Rocky Hill police reports show that defendant Vriga gave ONE statement, that had to reprinted because the police could not read Vriga's writing. The inscription on the second statement reads: "2nd – Retaken statement  1st statement illegible." Otherwise Vriga's statements are identical. Nowhere did the police find that Vriga was being untruthful. The plaintiff's factual assertion is a lie, repeated by plaintiff's counsel as fact.

Paragraph number 26 of the plaintiff's statement of material facts states: " There were positions available that the plaintiff could and should have been given, even if his position was being eliminated, but that did not happen." Again, the plaintiff's testimony on page 140 of his deposition, which is cited as evidence of this fact, states NOTHING

7

about another job for which the plaintiff was qualified. What the plaintiff testified to was that a secretary, who had been laid off, was called back on a part-time basis. From that fact the plaintiff fictionalizes that he should have been called back for a secretary's position.

      Another example. In paragraph No. 28, the plaintiff asserts as fact that defendant Migliaro made the decision to lay off the plaintiff in 2003. However, the plaintiff's actual testimony on this issue was that he assumed the Migliaro was the one who made the decision about who to lay off, but does not actually know if any of the defendants had input into the decision about the layoffs. The plaintiff's testimony on this point:

> Q: Okay. Is it your testimony that the decision to lay you off was the Commissioner's decision?
>
> A: As far as I know yes.
>
> Q: Do you know if any of the defendants had any input in who got laid off?
>
> A: I don't know.

(Facts, ¶ 64).

      The un-refuted testimony of several DVA employees, including Robert Norman, the Director of Public Affairs, is that a committee of managers, which did not include the defendants, made the decisions about who would be laid off.

      These are but three examples of the liberty plaintiff's counsel employs to misstate the facts because there is no evidence to support that plaintiff's claims. In order to prove a conspiracy, the plaintiff must prove a corrupt agreement, an overt act in furtherance of that agreement, and membership in the conspiracy by each defendant. Kashi v. Gratos, 790 F.2d 1050, 1055 (2d Cir. 1986); Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229 (2d Cir. 1999).

      Except for the plaintiff's conclusory allegations and his personal interpretation of events, he has NO actual evidence of a civil conspiracy. There is no evidence to support

8

Mitchell's accusation that the witnesses to the June 21, 2002 incident lied in their statements to police.  For instance, the plaintiff asserts that as part of the conspiracy after the June 21, 2002 incident, defendants Vriga and Collin left the premises. This is true.  Vriga went to the hospital to see his ill mother and Collin left for medical treatment.  (Facts, ¶¶ 41 and 45).  Plaintiff admits that Collin left to seek medical treatment and that defendant Vriga left the premises, but has no evidence to disprove that Vriga went to see his ill mother. (Plaintiff's Rule 56(c) response, ¶¶ 41 and 45).  So the fact that these two witnesses left the premises does not establish a conspiracy.

Similarly, the plaintiff alleges that defendant Dunn conspired to destroy a security report authored by Building and Grounds officer Brian Toolan. (Amended Complaint, ¶ 14). But in the summary judgment materials, the defendants produced Officer Toolan's report, which does not corroborate what the plaintiff asserts that Officer Toolan overheard.[5] (Facts, ¶¶ 70-73).  In short, no report was concealed or destroyed.

Of course, in Mitchell's mind the fact that he disagrees with the defendants' statements is enough to establish a conspiracy.  If that were true, a conspiracy would exists in every case where facts differ.  The point being made is that different versions of events *do not establish a conspiracy*.   The plaintiff has no evidence of a conspiracy.

**PLAINTIFF CANNOT SHOW THAT DEFENDANTS VRIGA AND DUNN VIOLATED HIS RIGHTS**.

Without conceding that the plaintiff can prove a prima facie case under § 1983 against any of the defendants, the plaintiff must also show that each defendant was personally involved in a violation of his constitutional rights.  Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987); Alfara Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987).  A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C.  § 1983, when he or she has directly participated in the infraction.

---

[5]   The plaintiff conducted NO discovery in this case that would have disclosed the report.

9

Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986)(emphasis added). A plaintiff must thus allege a tangible connection between the acts of the defendant and the injuries suffered. Bass v. Jackson, 790 F.2d 260, 263 (2d Cir.1986). In short, the plaintiff must show that his alleged damages resulted from the direct conduct of each defendant.

Neither defendants Vriga nor Dunn allegedly assaulted the plaintiff on June 21, 2002. Similarly, the plaintiff has no evidence showing that ANY of the defendants were actually involved in the decision to lay off the plaintiff in January 2003. At best, the plaintiff's claim that his substantive due process right was violated based on an assault only implicates defendant Collin. If the plaintiff's assertion that defendant Migliaro made the decision to terminate him in 2002 and then subsequently laid him off in 2003 after his reinstatement, then only defendant Migliaro is implicated in those adverse acts. Therefore, at a minimum, defendants Vriga and Dunn must be dismissed for a lack of any evidence of their personal involvement in the alleged violation of the plaintiff's constitutional rights.

## CONCLUSION

For all of the reasons set forth in its initial memorandum and this reply memorandum, the defendants pray that the court will grant the motion for summary judgment and dismiss the case.

DEFENDANTS,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:_____
        Joseph A. Jordano
        Assistant Attorney General
        Federal Bar # ct21487
        55 Elm Street, P.O. Box 120
        Hartford, CT 06141-0120
        Tel:  (860) 808-5340
        Fax: (860)808-5383
        E-mail: Joseph.Jordano@po.state.ct.us

### **CERTIFICATION**

The undersigned hereby certify that on this 30th day of January 2004, a true and accurate copy of the foregoing Reply Memorandum in Support of Summary Judgment was sent by first class United States mail, postage prepaid, to:

John R. Williams, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

_____
Joseph A. Jordano
Assistant Attorney General