UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HERBERT L. MITCHELL,       :
   Plaintiff,              :
                           :
VS.                        :   Civil No. 3:02 CV2136(AVC)
                           :
MAURICE COLLIN, TASI VRIGA,:
EUGENE A. MIGLIARO, JR.,   :
CHRISTOPHER DUNN           :
   Defendants.             :

RULING ON THE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

This is an action for damages alleging violations of the United States Constitution incident to the plaintiff's termination from employment. It is brought pursuant to 42 U.S.C. § 1983. The plaintiff, Herbert Mitchell, alleges that the defendants, Maurice Collin, Tasi Vriga, Eugene Migliaro, Jr. and Christopher Dunn, retaliated against him for exercising his rights as secured by the First Amendment to the United States Constitution. Also, the plaintiff alleges that the defendants violated his Fourteenth Amendment constitutional right to procedural due process by providing an insufficient termination process. Finally, the plaintiff alleges that an assault at his workplace violated his substantive due process right to bodily security.

The defendants now move for summary judgment pursuant to Fed.R.Civ.P. Rule 56(c) arguing that there are no genuine issues of material fact and that they are therefore entitled to judgment

as a matter of law. The issues are: 1) whether filing a police report and a workplace grievance are a matter of public concern within the context of the facts presented here; 2) whether the termination process at issue here satisfied procedural due process requirements; 3) whether an altercation with a supervisor constitutes a violation of a substantive due process right; 4) whether each defendant was personally involved in the alleged deprivation of the plaintiff's constitutional rights; and, 5) whether the defendants in this case are entitled to qualified immunity.

For the reasons hereinafter set forth, the court concludes that: 1) Mitchell's speech was not protected by the First Amendment; 2) some of the termination processes[1] did technically violate procedural due process precepts; 3) there was no substantive due process violation; 4) there was no personal involvement by the defendant Dunn in the procedural due process violation; and 5) Vriga, Collin, and Migliaro are not entitled to qualified immunity. The motion for summary judgment (document no. 17) is therefore GRANTED in part and DENIED in part.

## FACTS

Examination of the complaint, affidavits, pleadings, Rule 56(a) statements and exhibits accompanying the motion for summary judgment, and the responses thereto, disclose the following undisputed, material facts.

---

[1] The facts disclose that Department of Veteran's Affairs officials terminated Mitchell three times.

2

The plaintiff, Herbert Mitchell, was a Veterans' Service Officer ("VSO") trainee with the Connecticut Department of Veteran's Affairs ("DVA"). On June 21, 2002, there was an altercation between Mitchell and the office supervisor, a defendant, Maurice Collin.

That same day Mitchell filed a police report claiming that Collin had physically assaulted him by shoving him three times backwards in the presence of another defendant, Tasi Vriga, the Deputy Commissioner of the department and a friend of Collin. Based on this altercation both Mitchell and Collin pressed charges against the other. The state's attorney, however, declined to prosecute either complaint. On June 27, 2002, Mitchell also filed an internal workplace violence complaint with the head of security at the DVA.

On July 11, 2002, Vriga gave Mitchell a letter stating that: "You are being dismissed while you are in your working test period. During your working test period to date, you have demonstrated an inability or unwillingness to perform your duties so as merit continuation."

On July 17, 2002, Vriga rescinded the termination in a letter that scheduled a hearing for July 23, 2003 and further stated that: "The agency is contemplating your dismissal for your failure to show a willingness or ability to perform so as to merit continuation. Your recent behavior has shown an inability or unwillingness to display appropriate interpersonal skills with

3

your co-workers and supervisor ... You will be provided an opportunity to present reasons why the contemplated action should not be taken. You have a right to union representation at this meeting."

On July 23, 2002, the DVA held a hearing to discuss Mitchell's behavior on June 21, 2002. Mitchell was present with union representation. Following the hearing, Mitchell received a letter from Vriga again stating in part that: "You are being dismissed for your failure to show a willingness or ability to perform so as to merit continuation. Your recent behavior has shown an inability or unwillingness to display appropriate interpersonal skills with your co-workers and supervisor."

Mitchell filed a complaint with his union grieving his dismissal. On October 2, 2002, a stipulation reinstated Mitchell to his position with full back pay and benefits. In late 2002, the state budget crisis required the layoff of 2,800 unionized state employees, including some DVA employees. A committee of DVA officials, which did not include any of the defendants, decided how to make the necessary budget cuts while maintaining basic services. The union contract covering DVA employees, including Mitchell, required that layoffs occur by seniority. Mitchell had the least seniority of the VSO trainees. In January 2003, DVA laid off two employees, which included Mitchell.

**STANDARD**

Motions for summary judgment are granted if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 509 (2d Cir. 2002). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995).

The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. Johnson v. Ganim, 342 F.3d 105, 111-12 (2d Cir. 2003); see Matsushita Electric Industry Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Insurance Co., 804 F.2d 9, 12 (2d Cir. 1986). The non-moving party must produce facts sufficient to establish that there is a genuine factual issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986).

**DISCUSSION**

*1. First Amendment*

The defendants first contend that Mitchell's termination did not violate his First Amendment rights. Specifically, the defendants contend that Mitchell's "decision to report an alleged

5

assault by a co-worker does not rise to the level of protected speech on a matter of public concern."

Mitchell responds that "[d]iscipline of a municipal employee for reporting possibly criminal wrongdoing in his agency to law enforcement officials almost always is actionable under Section 1983 as a First Amendment violation." Specifically, Mitchell maintains that "such speech is protected even if the employee does no more than gripe about the illegalities to his peers, or to his supervisors."

In Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003) the Second Circuit stated that: "Where a public employee is alleging retaliation for the exercise of First Amendment free speech rights, he or she must initially demonstrate that: (1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) [the employee] suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action." (internal quotations and citations omitted).

The threshold issue is whether the employee's speech can be "fairly characterized as constituting speech on a matter of public concern." Connick v. Myers, 461 U.S. 138, 146 (1983). If the speech addresses a matter of public concern, then the court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of

6

the state, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Education, 391 U.S. 563, 568 (1968). If the speech involved is not a matter of public concern, the court need not reach the second step of the inquiry. Connick, 461 U.S. 138, 146 (1983).

Thus, the public employee must first show that his or her speech is protected by the First Amendment as addressing a matter of public concern. In other words, that it is of "political, social, or other concern to the community." Connick, 461 U.S. at 143; Garcia v. State University of N.Y. health Science Center, 291 F.2d 231, 235 (2d Cir. 2002). If the speech is "focused on matters personal to the employee, it cannot be classified as being on a matter of public concern." Johnson v Ganim, 342 F.3d 105, 112 (2d Cir. 2003). The First Amendment does not prevent the dismissal of a public employee who speaks "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." Connick, 461 U.S. at 147; see, e.g., Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 781 (2d Cir. 1991).

The nature of the speech is to be determined by focusing on the: "content, form, and context of a given statement, as determined by the whole record." Connick v. Myers, 461 U.S. at 147-148. This inquiry into the protected status of the speech is

7

a question of law. Rankin v. McPherson, 483 U.S. 378, 386 n.9 (1987); Connick 461 U.S. 138, 148, n.7 (1983).

Speech which addresses only personal grievances does not implicate matters of public concern. See Luck v. Mazzone, 52 F.3d 475 (2d Cir. 1995); Saulpaugh v. Monroe, 4 F.3d 134 (2d Cir. 1993); Ezekwo v. NYC Health & Hospitals Corporation, 940 F.2d 775 (2d Cir. 1991). In Mazzone, the court concluded that a plaintiff's letter to a radio station, which discussed the lack of air conditioning in her office in connection to a prior related news item was not a matter of public concern because it "concerned an employee's essentially private complaint, rather than a matter of public interest." Mazzone, 52 F.3d at 477.

Saulpaugh v. Monroe, 4 F.3d 134 (2d Cir. 1993) is conceptually very similar to the case at hand. There the court determined that complaints to superiors regarding several incidents of sexual harassment suffered by the plaintiff were not matters of public concern since they did not implicate "system-wide discrimination," but "were personal in nature and generally related to her own situation." Saulpaugh, 4 F.3d at 143.

The court there stated that if the "complaints to her supervisors [had] implicated system-wide discrimination they would have unquestionably involved a matter of public concern." Saulpaugh, 4 F.3d at 143. However, the court found that there was "no indication that the plaintiff wanted to debate issues of sexual discrimination, that her suit sought relief against

8

pervasive or systemic misconduct by a public agency or public official, or that her suit was part of an overall effort to correct allegedly unlawful practices or bring them to public attention." Saulpaugh v. Monroe, 4 F.3d 134, 143 (2d Cir. 1993) (internal quotations and citations omitted).

In Ezekwo v. NYC Health & Hospitals Corporation, 940 F.2d 775, 781 (2d Cir. 1991) the Second Circuit similarly concluded that a medical resident's allegations of race and gender discrimination were not matters of public concern. Although her grievances "could be construed broadly to implicate matters of public concern" they did not in fact implicate matters of public concern because her speech was not intended "to protect the public welfare." Rather, they were "personal in nature and generally related to her own situation within the ... program." Ezekwo, 940 F.2d at 781.

As exemplified in the cases above, matters of public concern generally relate to a systemic criticism of the public institution that made the adverse employment decision. In comparing Mitchell's speech with that of public employees in the decisions cited above it is clear that Mitchell's speech does not constitute speech on a matter of public concern. A report of an isolated case of supervisor misconduct provided by the person affected is not a matter of public concern.

Mitchell identifies several cases in which reporting criminal wrongdoing was a matter of public concern. These cases,

9

however, are inapposite because they addressed criminal wrongdoing of a nature that would be of interest to the community or public at large. See, e.g., Vasbinder v. Ambach, 926 F.2d 1333 (2d Cir. 1991)(reporting suspicions of potential fraud, theft, and misallocation of public funds to federal officials was conceded to be a matter of public concern); Dobosz v. Walsh, 892 F.2d 1135 (2d Cir. 1989)(cooperating with federal officials in an investigation of a shooting by another officer was conceded to be a matter of public concern).

Mitchell also points to several decisions from other circuits that similarly find that reporting criminal wrongdoing is a matter of public concern. Hafley v. Lohman, 90 F.3d 264 (8th Cir. 1996) (speaking to supervisors regarding an attempt to hide government records from an impending criminal investigation of the handling of public funds was a matter of public concern); Chateaubriand v. Gaspard, 97 F.3d 1218 (9th Cir. 1996) (complaining of illegal campaign activity and pressure to perform it was a matter of public concern); Paradis v. Montrose Memorial Hospital, 157 F.3d 815 (10th Cir. 1998) (alleging fraud, malfeasance, and discrimination by hospital administrators was of public concern).

However, in these cases where public concern was found in relation to a report of criminal wrongdoing, it was always for the purposes of exposing systemic misconduct affecting other employees or the public rather than the employee alone. They

10

involved reports given as a concerned citizen rather than as one personally involved in a dispute. Mitchell's police report is very different from the reports of fraud, police corruption, and mismanagement of funds reported in the cases finding speech on a matter of public concern. Indeed, courts have consistently focused on whether the employee's role in advancing the speech was that of a concerned public citizen informing the public that a state institution is not properly discharging its duties, or engaged in some manner of misfeasance, malfeasance or nonfeasance. As compared to speech calculated simply to redress personal grievances. Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999).

Mitchell's expression does not meet the threshold requirement since it is more accurately categorized as redressing his personal grievance. Mitchell was fundamentally concerned with relating his personal dispute with his supervisor rather than contributing to a debate on workplace violence or trying to correct systemic misconduct. Consequently, the court does not reach the other issues that become relevant only in the second balancing phase of the judicial inquiry.

2. *Procedural Due Process*

The defendants next assert that they "afforded [Mitchell] all of the required procedural due process rights." Specifically, the defendants contend that Mitchell was placed on paid leave and "given notice of a [hearing as required by Cleveland Board of

Education v. Loudermill, 470 U.S. 532 (1985)], his right to union representation, the nature of the contemplated discipline, and his right to offer reasons why the contemplated discipline should not be imposed" and appeared at the hearing represented by his union steward. The defendants further stress that Mitchell received additional process through the grievance procedure outlined in the union contract.

Mitchell responds that the defendants "first terminated [Mitchell] without affording him" a Loudermill hearing and that the subsequent termination's procedure was insufficient because Mitchell was not provided a meaningful opportunity to be heard. Specifically, Mitchell maintains that the hearing was deficient because "the termination letter already had been written when the so-called hearing began."

A procedural due process claim under the Fourteenth Amendment begins with "the familiar two-step inquiry. [The Court] must determine (1) whether [the plaintiff] possessed a liberty or property interest and, if so, (2) what process was due before he could be deprived of that interest." Cambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002). Therefore, the first issue is to determine whether Mitchell possessed a property interest in his employment.

It is long recognized that public employees may possess property interests arising out of their employment that are subject to protection under procedural Due Process. See Otero v.

12

Bridgeport Housing Authority, 297 F.3d 142, 151 (2d Cir. 2002). Mitchell was a public employee covered by a collective bargaining agreement. Thus, the defendants do not argue that Mitchell lacked a property interest in his job.

Having established the existence of a property interest, the issue becomes whether the process provided to Mitchell was constitutionally sufficient to protect his property interest in continued employment. In relation to the termination of public employees, the Supreme Court has held that procedural due process is satisfied if the government provides "[t]he essential elements of due process ... notice and an opportunity to respond" as long as a "full post-termination hearing" is also provided. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546 (1985). The pre-termination opportunity to be heard "need not be elaborate" or approach the level of a full adversarial evidentiary proceeding since it "does not purport to resolve the propriety of the discharge, but serves mainly as a check against a mistake being made by ensuring there are reasonable grounds to find the charges against an employee are true and would support his termination." Locurto v. Safir, 264 F.3d 154, 174 (2d. Cir 2001) (citing Loudermill, 470 U.S. at 545-46).

The defendants admit that Mitchell was initially fired without any notice or hearing. This violated his procedural due process rights. Although there are no actual damages since Vriga rescinded the termination six days later and Mitchell received

13

his back pay there was still a technical due process violation which may entitle Mitchell to nominal damages.

Regarding the second termination, Mitchell claims that the hearing was insufficient. However, Mitchell concedes that there was a hearing to discuss his behavior at which he appeared with a union steward as his representative. Further, Mitchell offers no evidence that the hearing was deficient and makes no claims as to what additional process he was due. Mitchell only cites to repeated language in all of the letters given to him regarding his termination.

In Locurto v. Safir, 264 F.3d 154, 171-73 (2d Cir. 2001) the plaintiffs alleged that the hearing was insufficient because the defendants had "predetermined to fire plaintiffs" before the hearing. The Second Circuit rejected this contention and held that "the requisite hearing [need only be] a minimal one" and "that due process is satisfied so long as the government provides a neutral adjudicator at the post-termination hearing for a tenured employee."

In this case, pursuant to the collective bargaining agreement, there was a post-termination hearing. Mitchell took advantage of the grievance procedure provided by the collective bargaining agreement, which allowed Mitchell a full post-termination opportunity to challenge his termination including the availability of arbitration. The grievance procedure resulted in Mitchell's reinstatement with full back pay.

14

Therefore, summary judgement is granted as it relates to the second termination process and denied as it relates to the first.

### 3. Substantive Due Process

The defendants next assert that "[t]here is nothing in the plaintiff's allegations against any one of the defendants that even remotely suggests governmental action taken with the intent to deprive him of life, liberty or property [] for the purpose of oppression, as required to state a valid substantive due process claim."

Mitchell responds that "[a] physical assault upon a public employee at his workplace, by his supervisors, certainly could be found by a jury to [violate his substantive due process rights]."

The substantive component of the Due Process Clause of the Fourteenth Amendment "protects individual liberty against certain governmental actions regardless of the fairness of the procedures used to implement them." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 125 (1992) (internal quotations and citations omitted). It guards against "government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994)(internal quotations and citations omitted).

"The first step in substantive due process analysis is to identify the constitutional right at stake." Lowrance, 20 F.3d at 537. Here, the right allegedly violated was Mitchell's liberty

15

interest in remaining "free of state intrusions into realms of ... bodily security." Rochin v. California, 342 U.S. 165, 169 (1952). Therefore, the relevant inquiry becomes whether the alleged assault was "so brutal, demeaning, and harmful as literally to shock the conscience of a court." Rochin, 342 U.S. at 169.

It is clear that the alleged assault does not rise to constitutional levels. Even if Mitchell's assertion that Collin pushed him "three times backwards" in the presence of Vriga is found to be true, it is not brutal in any sense of the word, especially considering that Mitchell does not allege any physical harm. Accordingly, the court concludes that there is no violation of Mitchell's substantive due process rights; therefore the motion for summary judgment in this respect is granted.

4. *Personal Involvement*

The defendants next assert that the plaintiff cannot prove personal involvement in a constitutional violation on the part of each defendant. The motion especially stresses that Dunn was not involved in the decision to terminate or lay off the plaintiff.

The plaintiff argues that Dunn's liability "stems from his knowing involvement in the cover-up which preceded the terminations and paved the way for them."

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." Williams v. Smith, 781 F.2d 319, 323 (2d

Cir. 1986). "[P]ersonal involvement is a question of fact ... governed by the general rule that summary judgment may be granted only if no issues of material fact exist and the defendants [are] entitled to judgment as a matter of law." Williams, 781 F.2d at 323.

The only allegation against Dunn is that he "ordered [a report that may have indicated that Vriga falsified his report to the Rocky Hill police] be concealed from the plaintiff and personally deleted it from the department's computer system." Mitchell, however, concedes that Dunn did not supervise him. Mitchell presents no evidence that Dunn's action of deleting the report had any causal connection to the decision to terminate Mitchell. Moreover, assuming arguendo, that the deleted report contributed to Mitchell's termination, that fact is irrelevant to the constitutional violation at issue, namely the denial of the requisite due process during the termination process. See Williams v. Smith, 781 F.2d 319, 324 (2d Cir. 1986).

Since there is no genuine issue of material fact concerning Dunn's involvement with the first termination the motion in regards to this defendant is granted.

Mitchell has however, sufficiently alleged that the defendants Collin, Vriga, and Migliaro were personally involved in depriving him of his procedural due process rights because the defendants admit that the termination was made by Vriga with the authorization of Migliaro. It is a reasonable inference that

17

Collin, Mitchell's supervisor, was involved in Mitchell's termination following the June 21 incident. The motion in regards to these defendants is therefore denied.

### 5. Qualified Immunity

The defendants contend that they are entitled to qualified immunity because "the defendants' conduct was objectively reasonable. The plaintiff will offer no credible evidence to suggest that under the circumstances described above their decision to terminate plaintiff, reinstate him, and subsequently lay him off violated clearly established law."

The plaintiff responds that the defendants are not entitled to qualified immunity because there is evidence of bad motive in their actions.

The doctrine of qualified immunity strikes a balance "between the need, on one hand, to hold responsible public officials exercising their power in a wholly unjustified manner and, on the other hand, to shield officials responsibly attempting to perform their public duties in good faith from having to explain their actions to the satisfaction of a jury." Locurto v. Safir, 264 F.3d 154, 162-63 (2d Cir. 2001) (internal citations omitted).

The 1985 Supreme Court case, Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985), clearly established the prohibition against terminating employees without notice or a hearing. Therefore, "the defendants may prevail on [their]

18

qualified immunity defense only if it was objective reasonably for [them] to believe that [their] conduct did not violate [Mitchell's] rights." Johnson v. Ganim, 342 F.3d 105, 116 (2d Cir. 2003).

Applying these principles the court concludes that there are factual issues with regard to whether the defendants' actions were objectively reasonable given the circumstances confronting them. Reviewing the facts in a light most favorable to the plaintiff a trier of fact could find that the defendants terminated Mitchell without a notice or hearing with knowledge that he was entitled to both. Accordingly, summary judgment is denied on this issue.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (document no. 17) is GRANTED in part and DENIED in part.

It is so ordered this 30th day of June 2004, at Hartford, Connecticut.

-------------------------------------
Alfred V. Covello
United States District Judge