UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HERBERT L. MITCHELL | : | NO. 3:02CV2136(AVC) |
| *Plaintiff* | : | |
| V. | : | |
| | : | |
| MAURICE L. COLLIN, | : | |
| TASI VRIGA, | : | |
| EUGENE A. MIGLIARO, JR. | : | |
| *Defendants* | : | August 2, 2004 |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION IN LIMINE

### INTRODUCTION

Plaintiff, Herbert Mitchell ("Mitchell") brought this action seeking damages under 42 U.S.C. § 1983 to redress the alleged violation of his constitutional due process rights. In the court's ruling on the Defendants' motion for summary judgment on June 30, 2004, this Court held that the Plaintiff could only proceed with his procedural due process claim relating to his initial termination from the Department of Veterans Affairs on July 11, 2002. The facts pertinent to this motion are as follows.

In October 2001, Mitchell was hired as a Social Services Trainee at the DVA. The state job description for that position requires a minimum of five years of social services experience. After the successful completion of a two-year training period, the plaintiff would be promoted to the position of Veterans Services Officer ("VSO"). Upon his hiring, Mitchell was informed of the two-year probationary training period and the requirements for completing the training period. At the time the plaintiff was hired and throughout his employment with DVA, Maurice Collin supervised the Veterans Advocacy and Services Unit and was Herb Mitchell's immediate supervisor.

Defendant Tasi Vriga was the Deputy Commissioner of the DVA and was Maurice Collin's immediate supervisor.

Despite his lack of training, Mitchell would often display an attitude of distain for supervision or direction especially, when he wanted to do things his own way. Mitchell also would say and do things that were disruptive or confrontational toward co-workers or his supervisor based on incorrect or insufficient information.

On June 21, 2002 at approximately 11:00 a.m., Mitchell took a memo from his supervisor directing him to correct some necessary paperwork and went up to Vriga's office. Vriga asked Collin to step into his office because Mitchell was there speaking to him about Collin's June 21, 2002 memo. Upon Collin's arrival at Deputy Commissioner Vriga's office, Mitchell became angry and, in a hostile voice, began shaking the memo at Collin stating that Collin was "harassing him by sending him three different memos and that he could not do that without the union being present there to represent him." Collin instructed Mitchell that the matter of his corrected itinerary was not open to discussion and that if he did not comply with the memo, he could be disciplined. Collin then left Deputy Director Vriga's office.

Mitchell followed Collin down the hall toward Collin's office, followed by Deputy Commissioner Vriga. In a threatening manner Mitchell began yelling at Collin about letting him do his job. Fearful of Mitchell's tone, Collin instructed Mitchell to do his job and to leave his office. Despite repeated directives to leave his office, Mitchell refused stating: "I've got mud on you and I'll get you."

Feeling threatened, as Mitchell moved toward the open door, Collin put his right hand on Mitchell's right shoulder and guided him back about six inches so he could close the door. At no time did Collin push Mitchell or assault him in any way.

Mitchell left the area and called the Rocky Hill police department to report an assault. The Rocky Hill police investigated the incident and took a statement from all of the participants and witnesses. All of the witnesses denied seeing Collin assault the plaintiff. Given that the June 21, 2002 incident having was not been the first time that Mitchell was confrontational with his supervisor, on July 11, 2002 the agency made the decision to terminate Mitchell. Based on the two-year probationary training period, the Human Resources Department incorrectly believed that Mitchell was still in his working test period for a permanent position with the state. Mitchell was given a letter dated July 11, 2002 communicating that he was being terminated.

Subsequently, in consultation with Mitchell's union, it was discovered that the plaintiff's working test period had passed, and therefore, as a permanent employee, formal administrative proceedings would have to be followed (i.e. a Loudermill hearing, etc.) before any disciplinary action could occur. Accordingly, on July 17, 2002, the plaintiff's termination was rescinded and a hearing was scheduled for July 23, 2002 pursuant to the Collective Bargaining Agreement.

In a July 17, 2002 letter to Mitchell, the plaintiff was placed on paid administrative leave. He was informed of the Loudermill hearing, his right to union representation, the contemplated disciplined that might be imposed and his right to present reasons why the contemplated discipline should not be imposed. On July 23, 2002, a Loudermill hearing was held to discuss Mitchell's behavior on June 21, 2002. The plaintiff was present with union representation. Later on July 23, 2002, the decision was made to terminate Mitchell from his trainee position at DVA because of his behavior toward his supervisor and his uncooperative attitude. A letter was delivered to him on that date informing him of the decision to terminate his employment.

Mitchell grieved his termination of July 23, 2002. Through that grievance process, a voluntary stipulated agreement was worked out that reinstated Mitchell in return for his

3

acknowledgement that he would be respectful towards co-workers and supervisors. Mitchell voluntarily executed the Stipulated Agreement. Mitchell returned to work in October 2002, with retroactive wages, benefits and service time from July 23, 2002.

## LEGAL ARGUMENTS

Initially, the plaintiff alleged in his lawsuit that he was the victim of workplace assault on June 21, 2002, that his Loundermill hearing on July 23, 2002 was a sham, and that he was retaliated against for reporting the alleged workplace assault to the Rocky Hill police.

The court rejected as legally insufficient all of the plaintiff's claims except one very technical claim, namely -- whether the defendants violated due process when the plaintiff was initially terminated on July 11, 2002 without a formal pre-termination hearing. The court also held that defendants did comply with the plaintiff's due process rights relating to his second termination after a Loundermill hearing on July 23, 2002. (Summary Judgment Ruling, p. 14). The defendants submit that the only disputed material factual issues are: (1) what defendant, if any, actually made the decision to terminate the plaintiff on July 11, 2002; (2) why the defendants mistakenly believed that the plaintiff could be let go without a formal hearing; (3) the defendants motive; and (4) if the plaintiff suffered any actual damages.

A careful review of the plaintiff's witness and exhibit lists suggests that the plaintiff will try to litigate claims that are already dismissed or will broaden the factual inquiry to peripheral matters because he has no actual evidence of animus. The defendants object to the offer of any evidence that would essentially permit the plaintiff to re-litigate his claim of an alleged assault or other workplace issues. Such evidence is not relevant under Rule 402 to the narrow issue of whether the defendants intentionally violated the plaintiff's "procedural due process" rights. It is settled law that in employment related cases the court's ( in this case the jury's) role is not to sit as

a super personnel administrator. The business judgment of the employer is not the issue. Blale-McIntosh v. Dadbury Beverages, Inc., 1999 U.S. Dist. Lexis 16550 (D. Conn. 1999); New England Tel and Tel Co., 792 F.2d 251, 255 (1st Cir. 1986); Smith v. Monsanto Chemical Co., 779 F.2d 719, 723, n. 3, (8th Cir. 1985), *cert denied,* 472 U.S. 1050 (1986); Cowan v. Glennbrook Security Servs., 123 F.3d 438, 445-46 (7th Cir. 1997).

Furthermore, since it is not the role of the jury to decide if the plaintiff should have been terminated or if defendant Collin did assault the plaintiff (or vice versa), such evidence will only confuse the jury, inflame emotions and prejudice the defendants. The law of the case limits the claim to the technical due process violation that the court has already questioned

To the extent that the plaintiff seeks to provide some background, the court should be circumspect and cautious to prevent the defendants from having to litigate claims that have already been dismissed.

**ADMITTING UNRELATED ACTS, EVEN ONLY AS BACKGROUND EVIDENCE, WILL RESULT IN UNFAIR PREJUDICE TO THE STATE BECAUSE THE JURY MAY IMPROPERLY USE IT TO IMPOSE LIABILITY.**

As has already been mentioned above, the plaintiff will likely attempt to introduce his version of events that premised his allegations of an assault and cover up. He will attempt to offer the hearsay statements of various DVA employees who had no direct input into the decision to terminate the plaintiff's employment, and more importantly, no fathomable involvement in the decision whether the plaintiff was entitled to a hearing in July 11, 2002.

Precisely because the such evidence has already been rejected by the court, it is not material to issues in this case.

## CONCLUSION

For all of the reasons stated above, the defendants move the court for an order in limine prohibiting the plaintiff from offering any evidence about matters or claims that have already been rejected by the court in its summary judgment ruling. The defendants further requests that the court require that the plaintiff make an offer of proof at an evidentiary hearing so the court and assess the foundational, relevancy and prejudicial effect of any proffered evidence on this issue before ruling on the admissibility of such evidence.

DEFENDANTS,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Joseph A. Jordano
Assistant Attorney General
Federal Bar No. ct21487
55 Elm Street, P.O. Box 120
Hartford, CT  06141-0120
Tel: (860) 808-5340
Fax: (860) 808-5383
E-mail: Joseph.Jordano@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing  Memorandum in Support of the Defendant's Motion in Limine was mailed on this 2nd day of August, 2004, first class postage prepaid, to:

John R. Williams, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

_____
Joseph A. Jordano
Assistant Attorney General