UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| HERBERT L. MITCHELL : | |
| : | |
| VS. : | NO. 3:02CV2136(AVC) |
| : | |
| MAURICE L. COLLIN, : | |
| TASI VRIGA, : | |
| EUGENE A. MIGLIARO, JR. : | |
| and CHRISTOPHER DUNN : | JULY 27, 2004 |

### BRIEF IN OPPOSITION TO MOTION FOR RECONSIDERATION

    The defendants have moved that this court reconsider that portion of its June 30 ruling which denied summary judgment as to the plaintiff's claim that he was denied procedural due process of law in connection with his termination from employment by the State of Connecticut following his complaint to the Rocky Hill Police Department that one of the defendants had physically assaulted him.  The defendants claim the court should give them the entire candle because their actions in denying procedural due process to the plaintiff were merely "negligent" and "a mistake...."

    The fatal weakness in the defendants' argument is their assumption that their wrongdoing was merely negligent.  The evidence, however, supports a jury finding that the defendants acted intentionally:

1

- The plaintiff did not raise his voice at any time during the meeting he had with defendants Collin and Vriga.  He stated to Collin that he would have no choice but to file a grievance, whereupon Collin began yelling: "Get the hell out of my office!" to which the plaintiff responded that he was speaking not to Collin but to Vriga.  (Plaintiff's deposition transcript, p. 39)

- At that point, Collin again yelled: "Get the hell out of my office!" and came up to the plaintiff and shoved the plaintiff three times.  The plaintiff opened the door and Collin shoved him out.  The plaintiff went upstairs and called security.  (Ibid.)

- Collin, Vriga and Matulis all have lied about the incident.  (Id. p. 40)

- Knowing that the police were on the way, Collin, Vriga and Matulis all immediately left the property.  (Id. pp. 50-51)

- Prior to this incident, Collin had stated to the plaintiff that the plaintiff was working very hard and very diligently and that he was impressed with the plaintiff's knowledge, demeanor and his relationship with the people.  He said to the plaintiff: "You know, you're one of the best people that I've had.  You've become the fastest and the quickest."  (Id. p. 55)

- After the plaintiff had made his complaint to the Rocky Hill police, defendant Vriga ordered him to be in his office in the early afternoon.  As the plaintiff was walking to that office with his union steward, they observed Collin walking out of the facility.  There were three security guards present and defendant Vriga.  Vriga

handed a piece of paper to the union steward and to the plaintiff and said: "Read it." It said that the plaintiff was terminated for inability and unwillingness to perform the job. The plaintiff pointed out that they had been telling him that he was doing a great job and had said that publicly on several occasions at the monthly VSO meetings. (Id. p. 83)

- When the plaintiff's termination was reversed and set aside by the State Labor Board, and he was ordered returned to his job with back pay, the plaintiff was told that he was supposed to be given his keys, his passes, and that everything was supposed to be as it had been before. But defendant Collin held back all of these things and did not let the plaintiff have his passes and keys or access to the computers until just before he was laid off in 2003. (Id. pp. 104-06)

- The plaintiff's layoff in 2003 was further retribution for his having complained about workplace violence. The claim that he was laid off for budgetary reasons was false. (Id. pp. 138-40)

- There were positions available that the plaintiff could and should have been given, even if his position was being eliminated, but that did not happen. (Id. p. 140)

- Defendant Migliaro specifically stated to Sam Ranno, a member of the Board of Trustees of the VA hospital, that the reason the plaintiff was fired and the

reason he was laid off was because the plaintiff had called the police on defendant Collin.  (Id. pp. 141-43)

- The decision to lay the plaintiff off in 2003 was made by defendant Migliaro.  (Id. p. 144)

- Defendant Vriga terminated the plaintiff on July 11, 2002, without any notice, opportunity to be heard or hearing, for the stated reason that "you have demonstrated an inability or unwillingness to perform your duties so as merit [sic] continuation."  (Defendants' Exhibit 7)

- On July 17, 2002, defendant Vriga rescinded his termination of July 11 but ordered the plaintiff to report for a hearing on July 23, 2002, and suspended him, with pay, until that date.  His stated reason for this action was "your failure to show a willingness or ability to perform so as to merit continuation.  Your recent behavior has shown an inability or unwillingness to display appropriate interpersonal skills with your co-workers and supervisor.  In recent events you and your co-worker have been unable to work cooperatively.  There has been contentious behavior surrounding issues of answering the telephone, parking personal vehicles, parking and gassing up the state vehicle.  There have been numerous occasions when you have inappropriately challenged the directives of your supervisor and/or failed to follow the instructions you were given."  (Defendants' Exhibit 8)

- On July 23, 2002, defendant Vriga handed the plaintiff a previously-written letter, dated July 23, 2002, which terminated his employment "effective with the close of business on July 27, 2002" "for your failure to show a willingness or ability to perform so as to merit continuation.  Your recent behavior has shown an inability or unwillingness to display appropriate interpersonal skills with your co-workers and supervisor....In recent events you and your co-worker have been unable to work cooperatively.  There has been contentious behavior surrounding issues of answering the telephone, parking personal vehicles, parking and gassing up the state vehicle.  There have been numerous occasions when you have inappropriately challenged the directives of your supervisor and/or failed to follow the instructions you were given....As a Social Services Trainee the minimum qualifications for eligibility included 'Interpersonal skills; oral and written communications skills; (and an) ability to follow oral and written instructions.'  These are the skills with which you should have entered state service and ones you should have been continuing to develop and hone during your time as a trainee.  You have not demonstrated skills and abilities in these areas at any level of proficiency specifically with regard to co-workers and supervisors."  (Defendants' Exhibit 9)

    The defendants admit that the plaintiff, because of his union membership, had a property interest in his state job.   Once the property interest in the public position or benefit has been established, arbitrary deprivations are unlawful and

actionable.  Herz v. Degnan, 648 F.2d 201 (3d Cir. 1981); Winegar v. Des Moines Independent Community School Dist., 20 F.3d 895 (8th Cir. 1994); Palmer v. City of Monticello, 31 F.3d 1499 (10th Cir. 1994); Karan v. Adams, 807 F. Supp. 900 (D. Conn. 1992) (Cabranes, J.); Galvin v. Lloyd, 663 F. Supp. 1572 (D. Conn. 1987); Banerjee v. Roberts, 641 F. Supp. 1093 (D. Conn. 1986) (Cabranes, J.).

    The defendants' argument is not materially different from their previous argument about qualified immunity.  A jury could find that the defendants knew they were acting in violation of the law and a jury could find that the defendants acted intentionally and with an intent to injure the plaintiff.

    The motion to reargue should be denied.

Respectfully submitted:

_____
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX:  203/776-9494
E-Mail: jrw@johnrwilliams.com
Plaintiff's Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Joseph A. Jordano, Esq., Assistant Attorney General, P. O. Box 120, Hartford, CT 06141-0120.

_____
JOHN R. WILLIAMS